and we'll call the next case. Would both attorneys step up to the podium and identify yourselves for the record. Good morning, Your Honor. This is Michael Orenstein, State of California Defendant representing Edward Stone Defendant Attorney. And Mary Boland on behalf of the people. Each side will have approximately 15 minutes to present oral arguments. From that, Mr. Orenstein, you may save out some time for rebuttal. Your Honor, as counsel, my client pleaded guilty in a negotiated plea. He was told, admonished, that he would get several sentences, two consecutive and the rest concurrent. Which he did. That was his plea deal. Now, if everybody agrees his plea deal was illegal, you can't get concurrent sentences for the offenses he pleaded to. And you haven't been able to get them for a very long time. Now, I'm sorry, did you say that the plea was illegal? Well, the sentence was illegal and the plea was illegal. All right. The plea deal was illegal. And the reason is this. Under People v. White, a plea deal is illegal and void under two conditions. First of all, the sentence is illegal. And second, if the defendant is improperly admonished in accordance with the sex, if the illegality fails itself in the actual sentence and the admonishment. Now, are you saying here that he wasn't, what are the admonishments that are missing? No, he was admonished for exactly, he was admonished, no admonishments were missing. He was admonished for exactly what he got. Okay. And the admonishment is described in a legal sense, just as they did in White. And under White, White says that the illegal sentence becomes an illegal plea deal if the admonishment, if the admonishment is improper. Well, let's talk about White. Okay. Now, White was a direct appeal. Correct. There was a motion to vacate the guilty plea, I believe, within eight days of the entry of the plea. All correct. In that case, the factual basis suggested that a weapon was used in the shooting. Correct. And that the mandatory requirement was that the minimum was 35 years. I believe that's 35 or more, depending on the enhancement. Yes, but he was sentenced to 28. Yes. And in that case, the Supreme Court said that the sentence was below the mandatory minimum. That's true. And that he should be allowed to vacate his plea and, because to resentence him wouldn't be really what the agreement was. Is that true? Well, they said that, but they also said that because the... Oh, they said the failure to admonish. They said that was why the sentence was illegal, and then when they got to where the plea deal was illegal, the only thing they said was the failure to admonish, or the problem with the admonishment. Yes. They did say there were admonishments. Yes. All right. Okay. All right. So, here both conditions were met. If the state concedes that sentencing was illegal, everyone agrees that something is more here. Well, all right. Now, let's... Well, the cases suggest that when a court exceeds its jurisdiction in sentencing, that it's void. True? That's one way of sentencing. That's one way of coming at it. But, and then the cases also suggest that any time the court... Acts outside of statutory authority. That it's void. Right. Okay. And that's sort of like the real rub here, isn't it? Right. That's correct. If it weren't void... If this was a plain error issue, then there's something that we... And what if it were just voidable? What? If it was voidable? Then you wouldn't be able to attack it on collateral review. True? Even, I mean, if it's voidable, I think you could always attack it on your direct appeal, and I think you could move to vacate and say the sentence was voidable, but on collateral review, if it's voidable, as opposed to void, you don't... You aren't allowed to attack it. Well, you're not attacking it the way my client is. The opposite might be the case. If they're filed a post-conviction petition, alleged convicted assistant, it's not to do with... So not in 214-01, like the way my client did. I would agree with that. Okay. So, no, we have... Is that... Our condition is that both the sentence and the plea agreement are void. Yes. Okay. So here both conditions that we see in white are met. So I just want to clear up one thing. So if the sentence weren't void, you say the plea and the sentence weren't void, but if the sentence weren't void, you wouldn't be able to attack it in a 214-01. If nothing was void... There has to be something void to attack a 214-01. Or is the state put to the manner in which the sentences were put together? Something has to be void to go to the 214-01. All right. Well, let me go right to this question. In this case, do you agree with the state's suggestion that under the statute at the time, he pled to four indictments, correct? One was not... There were five altogether. There was five. I don't remember how many there were. There were five. I believe there were five. Okay. And I believe the state mallied one of them in exchange for this plea agreement. That's... And he pled guilty, and he was sentenced to 24 years on the indictment charging aggravated criminal sexual assault. Right. And he was sentenced to 15 and nine on one of the other indictments charging criminal sexual assault. Right. And I believe he was sentenced to another 15 or... I'm not sure about that. Or maybe nine on one of the criminal sexual assaults. There was a 15 plus nine, which were consecutive to each other. Yes. Which was concurrent to the 24, which was concurrent to everything else, which I don't remember what it was. But in this scenario, do you agree that the court, that there could have been a plea to this 24 years where he could have gotten six on the aggravated criminal sexual assault indictment? He could have received four on each one of the criminal sexual assaults. And if the court had run each one of those consecutively, that this would not be a void sentence? Yes. You can make the numbers work. There's no question about that. Okay. Why don't we do that? Why don't we do that? Because... Because... Because voice is voice is voice is voice. Well, that's the problem. That's why I'm asking you, is it truly void? We don't have to agree with what you've conceded or what the state has conceded in terms of whether this is a void sentence. Because if the court could have, within the confines of the statute, imposed a proper consecutive sentence for each one of these offenses, why is this void? Why isn't this simply an erroneous configuration? Because the statute very clearly says that where you have an ACSA case or a criminal sexual assault case, they have to be consecutive. Right. And what I'm asking you is this. Is it truly void when the sentence that could have been imposed, six, four, four, and four, would not be void? It wouldn't be in violation of the statute. So if this sentence is one that could have been properly imposed within the party's agreement, why is it void? Why isn't it simply an erroneous act by the court? Well, that's because it goes back to what we were talking about. It's not an erroneous act because it involves no facts, it involves no discretion. It is something that the trial court did that they simply could not do. All right. I'm simply asking this. Is every act that a judge enters in violation of the statute void? Every act that a statute clearly says a judge has no power to do is void. What case would you say says that? I mean, I know it's kind of a difficult case. That's why the court came up with this. Well, Donaldson, you know, has been argued by the state appellate court. It was argued in January. In that case, the appellate court said the sentence was void, but they said the plea wasn't void. Now, what about this plea? Are you suggesting that the plea was unknowingly made, involuntarily made, that there is a manifest injustice in the acceptance of the plea of guilty? I'm not saying anything like that. All right. Now, is that significant that under Rule 604B and under all precedent, a defendant is not automatically entitled to vacate against it? True. It would be significant if it was void, but it is not significant because it is void. If it were void, it wouldn't be protected at any time. What if the sentence is void but the agreement is not void? If the sentence is void but the agreement is not void, then the state is right and it should go back to redo the numbers. Why can't we just do that? The question of whether the agreement is void is based on contract principles. Right? And he – I wouldn't say under what – under a bunch of above court cases. You know, Johnson, Gregory, Hare, you certainly could look at that. But White says nothing about contract principles. It says – it talks about is the sentence legal and what were the admonitions? Well, it's legal – it would be legal in these four or five cases for him to get 24 years. It's legal that he gets 24 years. Right, but not the way he got it. Okay. So why is it void then? If the court could have correctly and properly given him 6, 4, 4, and 4, why is this a void order? Because it's consecutive. He can't be – I mean, it's concurrent. He can't be concurrent. No, but the court could have imposed this agreement. Isn't the heart of this agreement that he would get 24 years for these four indictments in exchange for the state nulling at least one count? And that was really what the parties had envisioned. The 24-year sentence at 85%. Except the record doesn't really show what the heart of the agreement is or why they did what they did. Can you really say that, that it doesn't show why he pled guilty for 24 years? Well, I mean, I'm sure my client was only interested in 24 years, but there's another piece of it. Why would he say – Where is the manifest injustice when no one is trying to make him serve any more time? I don't have – if you ask for a manifest injustice, I don't have it for you. We have to – don't we kind of have to look at all of the case precedent to come to a just and fair result here? I mean, can we ignore that you have to establish a manifest injustice in order to vacate a guilty plea? I would argue that, that you couldn't find a manifest injustice – that there's no manifest injustice justifying the result in White. White got a new trial. White got a new trial. Are you suggesting the procedural posture is the same? Now, think about it. In White, he moved to vacate his plea within eight days. The state and the defense at that point – I'm sure the state opposed the motion to vacate, and the court denied that motion. But the fact of the matter is, at that point, the challenge was being made immediately to vacate guiltily. Now, this case is procedurally quite different. We have proceedings that occurred almost – what? How many years ago? I think it goes back to – I just want to say – The offenses go back to – Oh, yeah. Do the offenses go back to 1993? In the 90s. The late 90s? Yeah, the early 90s. So, when we talk about the procedural posture, are we to ignore that here? I think you do, and I think that definition should be voidable and void. Instead of it's void, you get a statute that says, you know, any number of cases, the term at any time comes over and over again. No, the defendant wants to go back and have a trial. That's what he wants. He doesn't want to have his sentence – I mean, I'm not sure I understand that. He doesn't want – he doesn't feel that the sentence is unfair. He feels that he should have a chance at a trial because he wasn't given more than he should have gotten. He feels – he wants a new trial. That's what he wants. All right. Why is he entitled to a new trial if he got the deal that he asked for? Say that again? Why is he entitled to a new trial if he got the deal that he asked for? Isn't this a perversion of the system? Isn't this gaming the system? He got 24 years. He agreed to 24 years. Now he wants to start all over again. Why should he? If you want to pressure this argument, Your Honor, I don't have one. It's no more perversion of the system. All right. I'm still trying to get an answer to my question, and that is the case law says that there's a difference between a void sentence and a void plea agreement. Why is the plea agreement void? The plea agreement is void because he was admonished in accordance with the sentence, which is void. That is why. Was that – you think that whether the – when they tell them in the plea negotiations, you're going to get 24 years if you plead guilty, you think it's a material part of that contractual agreement as to whether or not those are ordered consecutively or whether they're ordered concurrently? Or isn't that just legalese? It doesn't mean anything to him. I don't think the record shows whether it's a material part. Can you argue just from a reasonable person's standpoint? Why would that be a material element of the agreement for a defendant as to whether he's going to get consecutive or concurrent time? What are the numbers going to say? The defendant might not care, but the state might not want to have all the minimum sentences for some pretty serious offenses here. Let's talk about the maximum. Do you know what he was actually facing, or would you agree that he's facing upwards of 75 years in prison for these offenses? If the maximum were imposed on the aggravated criminal sexual assault and the three other indictments charging criminal sexual assault. It would be at least 60, maybe more than that, 30 plus 50 plus 50. It might be more than that. The maximum on the criminal sexual assault could have been 30. Is that true? The ag is 30. The ag is 30. And the others were plus ones. They were 15? Yeah. All right. So we've got 30 and we've got 15. I think that's 75. It's 75. There's a point where you can't stack them up any higher. So realistically, when these plea negotiations are going on, he's facing 75. Right. And the state agrees to not only one count and you're going to get 24 in exchange for plea of guilty. Right. So is there something about that that you're saying the record doesn't show that this wasn't a valid plea, but actually it kind of does show that, doesn't it? Because he got 24 on a case. They could have gotten upwards of 75, possibly more. And in the case, the record does show what the plea was based on. And we have the plea hearing where the court goes through everything. The factual basis was rather extensive. He did give written statements to the police. I think he admitted this to either his wife or someone else. There were multiple admissions. There was a written statement. And, of course, this involved sexual offenses going over a time frame of about 20 years involving a stepdaughter. True? Yeah. And at the time of the plea, the agreement the parties reached was 24 years. Well, they agreed 24 years in a certain way. To go back to what Justice Harper said, was there anything in that agreement that didn't really meet the expectations of the party? No one's trying to make him serve any more than 24, are they? Not in the plea agreement, because it was 24. I don't think that anyone has a philosophical disagreement with the idea that if a defendant enters a plea of guilty and he's given more time than the law allows. Let's say he was given, not this particular defendant, but someone is sentenced to 20 years when they really could only get 10 for the offense. I don't think anyone would seriously challenge that there's a problem with that, and the defendant should be able to correct that, because no one should spend any more time in jail for an offense than what the law allows. In this case, however, 10, 15 years after the fact, the defendant is now asking for a trial, when witnesses' memories fade. Some witnesses aren't available. Maybe the state can't prove the case now, so we should give the defendant a right to actually walk away from the whole deal? Yes, because that's what the defendant would like to argue. I know you're hearing my concessions. It's the same case. It's different. In White, the law required that he had to go back to get that add-on. That's not the case here. He doesn't have to get any more years than he's already got. In White, he has to get that 15. Was it 15 or whatever it was? He's got to get the add-on. That's not the case here. He doesn't have to get any more time. That is true. What about the Brown case? The Brown case? Yes. It's where a juvenile was transferred over to criminal court for class X felonies, and in that case, the court said that the statute, this was where the Safe Neighborhood Act struck down so that the proceedings that transferred him to adult court were void. Okay, I understand what you're saying. But in sentencing, they said that that wasn't just the easiest question to answer, and in that case, since the 28th was within the statutory framework, that it wasn't, I don't know if they said it wasn't void, they said that it really wasn't infirm. I'm using that word myself. But this case is similar to that in the sense that had the court entered these sentences in the configuration that you agree would be valid, I don't understand how this is a void sentence, but white is completely different procedurally because you had a direct appeal, you had a challenge immediately to an improper sentence. The aspect of white that's different here is the issue about the admonishments, I believe, during the pre-agreement. It was attacked within 30 days there. It was not attacked within 30 days in our case. Is that a difference in the case? The difference in time or all the waiver stuff is a distinction without a difference because if something is void, it can be attacked at any time. If it's not void, we lose. All right. But the court didn't say, okay, the sentence is void, therefore we've got to vacate the agreement. It says the sentence is void and the admonishments were improper. Right. The admonishments were improper because he was admonished that he was going to get something he could not legally get. That was the admonishment there. Well, actually, he could legally get 24 easily, 6, 4, 4, and 4. Yes, but he was admonished that all the sentences would not need to be consecutive. All right. What about the states of the Sappilard? Now, there are cases that if we take this, I don't know if it's Brown, but one of the cases says that the plea discussions do generally rest on basic contract principles, and I think you concede that much, that there's part of this that is a contractual sort of agreement. There is a lot of the cases that are contractual. I'm not sure why it says that, but okay. All right. But anyway, but the cases also say that these contractual principles in a criminal setting where there's a plea have to be tempered by constitutional principles. That's true. Okay. Now, are we talking about that kind of case where constitutional principles are at play here? Is there something? We've already said it wasn't involuntarily entered into or unknowingly. I don't think they're constitutional. All right. So then the cases suggest that if you don't have this tempering that's needed where the Constitution comes into play, that then contract principles are more significant. It is. So the contract principles and the estoppel cases are different than the contract cases. But estoppel is a principle that has been used in a contract setting to prevent a party who has received the benefit of the bargain from claiming later that that was. That's the whole distinction, not with the contract, not with the first part, with the estoppel argument. He's trying to get rid of the benefit of his bargain. He can get a much longer sentence. So that's what distinguishes those cases from the estoppel cases. That's the thing. I mean, the point of estoppel is estoppel is an equitable tool to prevent the manifest injustice by somebody who's trying to get out of a contract who's received the benefit of his bargain. Your guy has received the benefit of his bargain. He got the 24 he asked for. So the estoppel argument is he should not be heard to complain of that now. But, again, if you do that. You know why? Because you want a trial. You want to possibly. He wants to give up, doesn't he? He wants to get out. He doesn't want to do any more time. He wants a trial. Right. He has had the benefit of getting a lenient sentence. Right. And now the state's in a position where they may not be able to approve their case. So should they? Is estoppel a one-way street? I mean, isn't the whole idea is that the party, one of the parties has benefited, and now they're trying to renege on their agreement. Yes. So does that allow – what about the state here? Are we going to ignore that they may be in a difficult position of proving his guilt when 10 years ago he said, I did this? The answer is you have to because otherwise the parties can agree to any sentence and have it sit regardless of the statute. They can agree to an abominable sentence. They can agree to a voluminous sentence if you start with estoppel. Then it's not fair. There are a lot of cases. A lot of states that deal with this case. Not the case where a defendant has been sentenced greater than the law allows or the state isn't trying to get these consecutive sentences here. And it would be unfair for the state to suggest, you know, he should have been sentenced consecutively, so now we want to go back on that deal and we want to make sure he gets the consecutive sentences. That's a totally different scenario. But there are multiple cases from other jurisdictions that suggest when a defendant who has benefited from not getting consecutive sentences now wants to challenge that plea and the sentence so that he can possibly get off or, you know, have a finding of not guilty, that he will be estopped from doing that even when the plea agreement is void. I don't think that the void has developed in any number of Illinois cases. A lot of cases, for a lot of reasons, I don't think that's a mirror of a nationwide thing. I mean, every state is different. Right. And so if something is void, it can be assessed at any time. I mean, so either it is void or it isn't. And if it is, then he can't have estoppel or something that can't be assessed at any time. In civil proceedings, if someone challenges a contract and says it was void, the principle of estoppel that doesn't allow them to challenge that belief holds true. So for you to say that there's no Illinois authority on that, I believe this is not correct. No, but what I'm saying is there's a well-developed criminal doctrine of void, going back to ARNA and what is void, and void of an issue and the single sentence. There's all kinds of cases. I'm saying you can't just say case is out of state without knowing that if they have a similar framework, and I don't think at least in some of them they do. Ann, are there any other questions? I would ask that this Court reverse and order a new trial. All right. Thank you. We'll give you some time for rebuttal. Good morning once again, Assistant State's Attorney Mary Boland. It's interesting the Court's questions are very similar to the kinds of questions that the Supreme Court was asking in the Donaldson argument in January. Did they ask the question whether the sentences were void? Well, what they were really asking is what's the remedy? They accepted or it appeared to accept that the sentence was unacceptable in that particular case in Donaldson, and the question, though, really was if we can reform it, why should we find the plea agreement void? They were making that distinction, and the answer that the defense counsel gave was the same as here this morning, void is void is void. Right. You've never conceded that the plea agreement here was void? No. The plea agreement is not void. Clearly the plea agreement is not void. Ladies and gentlemen, the State has taken a position, has it not, that these sentences are void? Well, and I understand why the Court is raising that point. There's a view, and I think the more proper view is that when a court doesn't have subject matter jurisdiction, that's what makes a court's ruling void. But there's a whole line of cases that say to the extent a court rules beyond the statutory authority, that the court didn't have the power to do that. And then the order is resulting in void. Yeah. Aren't there cases also that say that not every violation of a statutory directive renders an order void? Well, that was one of the arguments that I made in Woodrow Brown. Woodrow Brown was that case, the transfer case, and that actually was raised, I think Justice Kilbride raised the point in the Donaldson argument, isn't this like Brown? And the point in Brown is you had a statute, you had that transfer statute, passed by the Safe Neighborhoods Act, that was declared void ab initio because of a single subject violation. So the transfer that got him from juvenile to the adult court, the court didn't have the power. I actually argued that it was administrative transfer and so it wasn't void. But anyway, the Supreme Court decided it didn't have the power to do that. But the point is he pled guilty for 28 years, and the court said that's within the sentencing range. The Safe Neighborhoods Law had extended the sentencing range, but his actual plea was within the proper sentencing range. Well, in this case, both of you agree that this could have been properly imposed if he were sentenced to 6, 4, 4, and 4. Yeah, I gave an example in the footnote in my brief that shows how the plea can be reformed so that a properly valid judgment can be entered on that plea agreement. Do you think, though, that the appellate court and the Supreme Court, even the circuit courts, should be engaged in this sort of reforming of the sentence 10 years, 15 years after the fact? Well, the reason, I think the reason that I think it's fair, and it may be that the Supreme Court will ultimately decide that estoppel applies. The court did question that. We did raise that argument there as well. So it may be that estoppel applies, but in the absence of that, I think, as the court has noted, contract principles should govern within the sphere of due process. When a defendant is saying, I didn't know that I would be subject to the enhanced sentencing like Pierre White, different procedural case, but in that case, there's no way to reform anything. He can't get a sentence for less than 35, and he pledged at 28. There's no way to fix that. When there's unfulfillable promises, when he's got ineffective assistance to counsel, when it's not voluntary, when those things are happening, you have to give him opportunities. In the White case, how did that whole thing arise in terms of, I mean, he moved to vacate. Was it based on the fact that he didn't get this sentence? Yeah, he moved to vacate within a very short period of time. But did he move to vacate because he wasn't given the 15-year add-on? Yeah, I can't remember that. I have the Pierre White case with me. But I do know that that became the whole issue is that he should have been admonished as to that add-on because what he pled to was simply improper. It was improper all the way around. So you have to go in that case and start over. But when you look at due process and when you say, well, what are the parameters of due process, if those parameters don't exist, if we don't have a due process concern, which we don't in this case, then the next question is, should contract principles apply? And the answer is yes. In this case, was he admonished? He wasn't admonished that his sentences had to be consecutive. Consecutive. He was only admonished as to those that were consecutive. But he was not admonished that these were consecutive. Right, because he was pleading to consecutive. Do you have any disagreement with the statement that the White is the last Supreme Court pronouncer on the issue where a defendant is sentenced to a sentence and the sentence is either too high or below the statutory required level that it's void? Actually, I think Woodrow Brown, that's why I think the court raised Woodrow Brown, because Woodrow Brown says we're going to keep a sentence within that sentencing range that was a proper sentence, even though the process by which the case came to the criminal court is void and we're going to send it back down for that additional hearing. But if the court finds the transfer was proper under prior existing law, then the court is directed to keep that 28-year sentence. And I think that's why, I think it was Justice Kilbride that made that point. Isn't this a case like Brown? In fact, Justice Thomas said, why can't we fashion a remedy where if there is no prejudice, we simply reform the agreement? And several of the justices seem to be— You know what bothers me about the concept of reformation under Donaldson is that it's an imperfect theoretical concept because it won't always work. And so looking down the road, the problem I have with Donaldson is, you know, we're supposed to look at things on kind of a broader view. And so, you know, accepting what ARNA gave us, which is that it's void, whether it's too high or too low, which has later been developed, as opposed to voidable, which would make life a lot easier. But assuming that, you know, accepting what ARNA gave us, when we get to the situation where, you know, maybe in this case, you know, if the numbers just happen to fit, you know, we can get that 24, you know, by doing 6-4-4-4 and 4. But what if there was another 4, you know, and it didn't fit? Then the theoretical construct doesn't work. This reformation theory, it's imperfect. And so from kind of a broader view, I mean, it can work here, but I'm wondering if that's what we should be looking at. And that's actually why the estoppel argument is a little bit more attractive. Yeah, what we did in this brief and what we did in Donaldson is we looked at the way the law had evolved in Illinois. And obviously our concern was that estoppel, while it cleaned up the area, while it allowed parties to agree to what they agreed to and not be able to come in on collateral proceedings and challenge that, where there was no other due process issue. Or even, as I pointed out in a few of these other jurisdiction cases, an enhanced sentence is not coming back on collateral proceedings at all because of the principles of estoppel. So while we think that is clearer, the concern was that there is a line of cases that say, where a court acts outside the scope, that order is void. And if the order is void, then what is the next step? Is the whole thing to be thrown out? Must we start over? That's why I think Woodrow Brown makes sense, because you don't start over. You take the parties where they are, and you're right. In this case, the numbers do work. In another case, they might not. But I will point out that the Illinois Supreme Court, in several cases, has made decisions. Well, let me look at this language in Brown. In Brown, here's kind of where they say that the sentencing aspect is the more difficult issue. But what they say is, while a sentence or portion thereof not authorized by a statute is void, it is void only to the extent that it exceeds what the law permits. The legally authorized portion of the sentence remains valid. Now, rather than all this reconfiguring and what have you, isn't it true in this case that the portion of the aggravated criminal sexual assault sentence that was 24 years, that the portion of that only became void when these other sentences, well, if it became void, when these other sentences are attached? That's correct. There's nothing wrong with that sentence. So, the portion of it, if this were done correctly, and both sides agree, that in this case, a sentence of 6, 4, 4, and 4 was valid. So, that in this case, rather than whatever reforming, the portion of that first sentence that is actually void, if you will, is the portion over and above the 6 years. And the portion of each other sentence is only void to the extent it exceeds the authority. So, under Thompson, and under all these other principles that we have to look at, it is true that a portion of each one of these is void, but not all of them. So, rather than reforming, the fact of the matter is that really, I'm getting back to the question that I asked Ms. Bornstein, is this really void, or is it rather a situation where a portion of each one of these sentences exceeds the maximum? And for the Supreme Court to do this is one thing. They have the supervisory authority that we certainly lack, but they have suggested that it's only void to the extent that it exceeds what the law permits. And in this case, it could clearly be argued that anything over the 6  or anything over the 4 in the other three indictments were void. So, therefore, the portions of those sentences are void, but in actuality, the sentence of 6, 4, 4, and 4 is not void. That is absolutely correct. That is another way to simply say we leave intact, because individually there's nothing wrong with any of these sentences, and there's nothing wrong with the plea bargain. And there are cases that say a sentence can become void when it is imposed, as it was in this case, concurrently versus consecutively. Right. Well, it is true that in White, the murder sentence itself was within the statute, but it was only when you added on the other conviction that it became illegal. Right. And so they didn't fashion a remedy. They said it was void. Well, that's because they couldn't fashion a remedy. There are cases where you can't fashion remedies, and one of the things that the defendant pointed out in his brief, he said, Johnson, Harris, and Gregory. If you're pleading guilty to aggravated criminal sexual assault, you cannot be given four years in the penitentiary. Right. That was the problem in those cases, and that was the problem in Pierre White. There's no way for a reviewing court to fix the problem, because the problem was he pled for 28, but he had to have at least 35. So there's no way to lop off anything or to fix it. It simply could not be fixed. What's the difference then? If you're saying we can affirm the legal part of one, for example, and if we're going to use this remedy thing, we take White, we've got a murder conviction, and we say, okay, part of this is legal, but the add-on is illegal. On this case that we have in front of us, you can say, well, yeah, part of this, the first 24 is legal. It only became illegal when we added the others. What's the difference? The Supreme Court said it's void. Because the individual sentence in Pierre White, it wasn't just the murder, it was the factual basis for that meant that there had to be an add-on. It's not the same thing in White. The factual basis was there was a pistol involved. But that's the point. That's what I'm saying. In White, that's the problem. Here, it is not the problem. The problem is that when you combine all the sentences in the manner in which they are to be served, it's problematic because the law requires certain ones to be consecutive, and yet they're concurrent. So one way to reform it is exactly as Justice McBride said. I'm not suggesting a reformation. I'm saying that the case law says that only to the extent that a sentence exceeds the statute, it's void. Now, Donaldson remanded and sent it back to effectuate this reformation by, what, reconfiguring the sentences? Yes, because they were. Did they propose the same thing? Yes. They were concurrent. They should have been consecutive. And they sent it back for that reason. Did they say the sentences weren't void? In Donaldson, the plea agreement was upheld. The sentences were vacated. I can't remember whether they used the actual word void, but the point is the plea bargain. There was nothing wrong with the plea bargain, and so it was sent back. And so the question, and the Illinois Supreme Court is asking, what is the difference? One of the justices, Justice Garmon, I think, said, what is the difference between serving 50 years consecutively or 50 years concurrently? Where is the harm? Where is the prejudice? And so that's the point. There's some things that structurally cannot be served the way they were entered, Pierre White. There are other things that can be served. It's just the nature in which the court's order accepting that plea bargain was entered is problematic. Are there other cases pending that you're aware of within your office relating to these challenges about when a consecutive sentence wasn't proposed? Yeah, there actually are some. Do you know approximately how many there are? Well, I do know that we've had nine cases. I can't cite them because some of them are unpublished. But I do know that there have been at least nine cases decided on the issue of following Donaldson, either applying Donaldson or finding White to apply depending on the case. You had perhaps a Torres Valencia problem where you have that predatory criminal sexual assault. It gets enacted. There's a statutory voidness, and then it gets reenacted, and the crime is charged before it gets reenacted. Then you have a void charge. So there are some cases. Do you account for confusion in the statutes that resulted in these sentences the way they were agreed to? You know, there might be some confusion. It was 97, it was actually July 22, 97, that we had the single course of conduct change in the sentencing statute. Wasn't there the case of Meeks where the Supreme Court had to issue a mandamus order to tell a judge to impose a consecutive sentence because the judge didn't think the consecutive sentencing provisions applied? Yeah, I think it was Mearsman, but that's exactly right. And I've got a case on my desk right now where we're looking at that same type of thing. So occasionally it happens, still some confusion. What does the statute say right now in terms of? Single course of conduct, different courses of conduct, if you have trigger offenses. My area of specialty is sexual assault, any of the sexual assault crimes. Do you think the language of the statute is still unclear about how many offenses have to be consecutive? I mean, if there's one triggering offense, does that mean that every single criminal sexual assault or predatory criminal sexual assault or aggravated criminal sexual assault, for each act there will always be, at least now, isn't it mandatory, at least the way everyone is interpreting it, mandatory consecutive sentencing for each act in violation of 12.13, 12.14, and 14.1? Yes, absolutely. Those are all trigger offenses and those are all consecutive. And since Curry has been decided, all triggers must be served before non-triggers. So at least in the area of sexual assault, but of course there's the range of crimes that these cases occur in. What is your response to applying a stop when it doesn't, I mean it could certainly be argued that you wouldn't use that doctrine when there's a complaint that the contract is void? Yeah, we're always going to be bound by due process. And you have to look at whether due process is implicated. In a case like this, there is no due process consideration. And as I pointed out in my brief- But let's say the parties entered into a contract that violates public policy. Would the estoppel doctrine be allowed to be used in that scenario? Well, it's an equitable doctrine, so you have to come to the court with clean hands. I don't know that you would come to the court with a violation of public policy expecting the court to give you some sort of equitable relief. I was going to ask you about that because I think Mr. Wernstein started to argue that these- I said that the Donaldson structure had some problems with the estoppel argument. It has a couple of problems, too, and Mr. Wernstein started to argue that. One of the problems with the estoppel argument is that it allows judges to go outside of the statute. And then as long as everybody agrees later, as long as the state's okay with it, for example, then estoppel is going to apply and he won't be heard to complain about it. And that's, I think, a problem with estoppel. I don't know if I said that clearly, but if everybody agrees to a sentence below the minimum and later on he comes back and says, well, you know, I should have gotten more, and the state says, wait, estoppel, that kind of puts a perimeter around the judge doing what they just told the judge not to do in the mandamus cases. So that's a problem with estoppel. But let me ask you this. Well, go ahead. The problem with estoppel is if you're going to have certain crimes and you're going to plead to those crimes unless there's a mistake, and mistakes do happen, and that's why these cases are coming up. Clearly it's a rare case where we would find collusion, but it is not a rare case where the state might say, I'm going to let you plead to a lesser offense. That power still exists. It's just if you're going to plead to these cases, there are certain consequences that occur, and the legislature has decided these are not only trigger offenses, but there's a way to serve them, and that's consecutively. But there would be nothing that stopped the state in a proper case or in a different case from allowing someone to plead to something that wasn't a trigger offense, for example. So that power still exists, but that's why we have the checks and balances. We have the adversary system. It is rare that the state would choose to allow a defendant to make those decisions or to drive the boat. It's rare that the defense doesn't get to be heard. And one would ask why, if we were to apply estoppel in this case, why wasn't estoppel applicable in white? Because in white you couldn't – actually some of the out-of-state cases, I think the California Supreme Court said, you know what, it's just an enhancement in the sentence. We're not hearing it. So in some jurisdictions they apparently do apply estoppel to that. In Illinois, the way the case law has developed, it seems to me there are limits. Limits to estoppel. Because in white they spend a lot of time talking about that it was very important to the legislature that these enhancements be followed. And so it may be, as Justice McBride just talked about, it may be where public policy creeps into estoppel. Because that was a big part of the white case, that we have to enforce these enhancements because that was an important step forward for the legislature. But, you know, was it easy enough in white when they laid the factual basis if they just didn't say anything about it on the end of it, right? That's the point. That's the point is that that could have been corrected in a different way. Through a proper alternative, it wasn't. And the price to be paid is that everybody has to go back in white. Well, in white, though, I do think you have to take into account its procedural posture. Can you really say that he received the benefit of the bargain when he's moving to vacate his plea eight days later? I mean, I don't know that that's really the same situation as what we have here. But I do think, Justice Palmer, when he's suggesting, what's your argument if the sentences don't fit? Is that something we should worry about at another time? Well, what I would do is still hold the parties to the bargain and send it back what I would do if I were the appellate court, of course, is hold the parties to the bargain, send it back, and ask the trial court to have a hearing and determine whether the parties themselves can come to an estoppel hearing. I'm sorry? An estoppel hearing? No, not an estoppel hearing. You were saying if the sentence doesn't fit, how could we address it? In terms of estoppel, you could address this case by nulling every count except the aggravated criminal sexual assault, or you could keep one of the other ones where you've got 15 plus 9 consecutive. I'm not sure you want to do that or whether you feel like that's something that you want to do in any case or agree to. Right, and I apologize. I wasn't answering in the estoppel context. I was just saying, what if the numbers don't fit and you send it back for reformation? How could that work? What about a hearing where the defendant establishes manifest injustice has occurred? Isn't that normally the kind of linchpin of how you are allowed to vacate a guilty plea? You do have to show a manifest injustice. That's exactly right. Does the record suggest that when he entered his plea to 24 years that there was some manifest injustice in that sentence? No. I'm not saying that's what should be done. I'm just saying, like you said, one of the questions the Supreme Court did ask in Donaldson was what is the remedy? What is the remedy? Several of them. The Supreme Court can fashion remedies. Do we have that power? I mean, do we really? Well, I think in this case you have the power to follow Donaldson, which is from this district and is properly decided and is the current state of the law. Obviously, the Supreme Court will ultimately decide Donaldson. It's pending. It's already been heard. It's probably going to come out within the next few months. So the court may choose to take it under advisement or wait or make the proper decision, which is the Donaldson decision, and remand for re-sentencing. You started to say something, and you didn't quite get it out, and I wanted to come back to it. When I was talking to you about how, from a theoretical standpoint, it's an imperfect construct because it won't always fit, and you started to say, well, the Supreme Court has made decisions, and I'd like to know what you were about to say. I think you were going to say something like the Supreme Court has made decisions in specific cases. Yes, I apologize. No, it wasn't because you didn't get it. We didn't let you get it out. I lost my train of thought and forgot to return to it. But Williams, I cited in my brief the Williams case, the Roe case, and Whitfield. While those are not directly on point, in each case there was a guilty plea. In each case, that guilty plea was problematic. In Williams, which is a 1997 case, the state recommended a sentencing cap of seven years, and it was a single offense of retail theft. The court actually gave three years plus a consecutive 40 months of probation. Obviously, that sentence was beyond what was statutorily possible. So the Supreme Court said that the sentence impermissibly increased the penalty for the offense. What did the Supreme Court do? It didn't vacate everything. It remanded the matter for resentencing. So in other words, it kept the plea agreement, but it wanted a corrected sentence. In the Roe case, again, the Supreme Court doesn't vacate the guilty plea. Predatory criminal sexual assault, the recommendation is eight years. All the parties in that case, the defense, the prosecution, the court, thought truth in sentencing would not apply, which, of course, affects how long he's actually going to have to serve. There's no question about truth in sentencing here, right? No, there's no question about truth in sentencing. Yeah, there's not an issue. But in that case, there was, and there was an actual order where they put it in all caps just so everybody would know. Only guess what? That was not proper under the law. The Supreme Court doesn't vacate everything. It sends it back for an equitable solution, and the equitable solution is to reduce his sentence to the statutory minimum with truth in sentencing to apply. So, again, the court reformed only the sentence part. And then, of course, everyone is familiar with Whitfield, a more recent case from 2005. Once again, the Supreme Court does not vacate the guilty plea. That's where he pleads guilty to murder for 25 years. Nobody's discussing the MSR. MSR would add three years. He argues that's unduly burdensome. He wants the benefit of his bargain. And the Supreme Court says, we're going to give you the benefit of the bargain. We're going to reform it to give you 22 plus three. So in that case, the court does not vacate the guilty plea. The court corrects the problematic sentence. So in each of those cases, so I think there is some history in the Supreme Court for doing that, and perhaps that's reflective of why the court was very focused on what the remedy should be in these types of cases and seemed to be inclined to unravel the whole plea bargain. And especially in a case like this, as you mentioned, Justice McBride, we're talking about a case that started 20 years ago of child sexual abuse. This kid has lived with that for 10 years. It's been in the court proceedings since 2003. It's been the direct appeal was affirmed in 2007. We're back here again in 2013, and now he wants a new trial. So I think that you can't ignore also the state's interest. And on collateral proceedings, there's a stronger basis for arguing the finality of judgment. So while we have a case law in Illinois that suggests there's some problem with the manner in which the sentence is to be served, we also have a very strong case law that suggests, not only from the Illinois Supreme Court, but from this court too in Donaldson, that the correct solution in a case like this is to make the sentence conform to the mandates of the law and not unravel the whole plea agreement. We had our friend, our brother, Justice Quincy, in that special concurrence that he wrote. Was that in Donaldson? Yeah, it was in Donaldson. And he had a problem with, what did he say? Well, what he said is it's one thing to have the defendants have the shield of protection when there's a due process problem, but it's another to allow them to march back into court and unilaterally, I'm paraphrasing obviously, but unilaterally try to get the benefit of their bargain while, when they quietly sit on their hands for a while, then come back in and try to use it as a sword. So the court, Justice Quinn especially, would have found that to be unacceptable, and he concurred in the decision in Donaldson to reform the sentence in that case. Anything further? Nothing further. We would ask this court to, you know, if it's inclined to find the escapo agreement applies, to provide no relief and affirm. We would also ask this court to, if any alternative. In the scenario that I described, though, the court didn't impose consecutive sentences originally, right? In which scenario? Well, under the statute, he could have been sentenced properly to six as long as it ran consecutive with four, and as long as that ran consecutive to that four, and the last four, as long as it ran consecutive. Right. All the criminal sexual assaults could have been four, and the ag could have been eight, and you would have gotten the 24, I apologize, and they would have all been properly consecutive except for the ag, which was an earlier offense that was a non-trigger. But they weren't made consecutive originally. That's correct. And when they weren't made consecutive, that's when they became erroneous. Well, the criminal sexual assaults. The sentence for each of these offenses should have been running consecutive. For all except for the ag crime sex assault, which was a non-trigger because of the date of the offenses and because of Bowles finding it not to be a single offense. But you agree, though, that the least that he could be sentenced to and still make it valid would be 24 years. That is the party's agreement, and that would conform to the law. All right. And if the court feels inclined, the court could do that on its own as well. But we would also ask that this court in the alternative remand for resentencing. Thank you. For example, Mr. Orenstein, in Brown, I read that section where they said it's only void to the extent that it exceeds the law. So isn't it true in this case that because the sentence could have been valid if it had been entered in terms of 6, 4, 4, and 4, that the 24 years really isn't a void sentence? No, because this is a – it's void for a different reason. It's void for a qualitative problem as opposed to a qualitative problem. It can't be consecutive. So you can't order it to the end. If it were ordered as 6, 4, 4, and 4, all consecutive. Well, it would have to – actually, 6 plus 4 times 4 would be 22. So the math doesn't play it out, but it could add up. It could be 6 plus 4 plus 4 plus 6. Now, 4 times 4 is 16, plus 6 is 22. So it has to be a little different. So you don't agree that the minimum has to be 22? The minimum is 22, unless I'm getting the math wrong, right? But it certainly could be 24. Okay, it could be 24, but it could be 22, and it would still be within the – if it had been a sentence like that, it wouldn't have been void. It's only when they weren't made concurrent, the sentences that they became void. Right. Now, you asked about, I think, where the language was in Donaldson. The language in Donaldson is based on Section 5844, that 4 should have been a post-consecutive sentence for ad crib sex itself. Thus, we find the sentence is void, and then they go and talk about, we conclude the plea agreement here taken as whole was not void, even though the particular sentence in the implementation was void. That's what Donaldson says. Yes, okay. But I really want to address this battle here. Well, I want you to answer this question. No, but in Brown, the court said that the sentence wasn't void. They said that it's void only to the extent that it exceeds what the law permits. The legally authorized portion of the sentence remains valid. Putting that aside, one of the things they said in Brown was that there's nothing in the transcript of the hearing on the plea and sentence to suggest that there was any actual misunderstanding of the governing sentencing standards or that such misunderstanding affected the terms of the plea agreement. Well, there had to be. Either there has to be a conspiracy or there has to be a misunderstanding in this case because it was decided in 1997 that grim sex offenses, whether they're single subject or whether they're a force of conduct or separate, so there had to be a misunderstanding. Or they did it on purpose. What would you account this misunderstanding to be with the judge, with the prosecutor, and with the defense attorney? I think the record has no way to know. If you were going to speculate, the most logical thing I would think is that the state would not want to have a bunch of very low sentences for a serious crime. But that's just my speculation and it could be right or it could be wrong. I can't imagine any other reason. I mean, we're still having these issues generated constantly about whether this requires a mandatory sentence. I mean, that Mearsman is the most recent example. Right. Where the Supreme Court had to issue a mandamus to tell that judge who thought it wasn't, that he didn't have to apply the consent, consecutive sentencing provision. Right. In a criminal sexual assault case or wasn't that one of them? I don't know. All right. Okay. The only thing about transfer statutes, and I haven't read about them, but transfer statutes are complicated because it goes into the difference between a transfer and a sentence and the sentence itself. And just because you transfer a sentence doesn't mean that the sentence itself is illegal. Transfer is its own sort of complicated craziness. And so I don't know exactly why that is. Well, what we're trying to say in your reply when you said, nothing suggests that Stone's sentences were a mistake. Rather, the trial judge is presumed to know the law. What were we trying to say there? It was a mistake? I'm trying to say that we don't know. There's nothing on the record to say that it was a mutual mistake as opposed to something the parties agreed to for whatever reason they agreed to. It may have been a mutual mistake, but there's nothing on the record that shows that. Well, you know, the last thing I want to talk about is when a defendant who's pled guilty and received a sentence, you know, here it was 24 and he could have gotten 75 and the state not let it count. Right. And 10, 12, 14 years later he's asking for a trial. How do you tell us or how would we write that there was a manifest injustice here? Because that's normally the standard we use to decide whether a court abuses his discretion in denying a motion to vacate. Well, I have two answers for you. First of all, this isn't the first time he's raised this issue. He hasn't been standing on his hands for 12 years. He was sentenced in 05. He filed a false plea motion and was denied. His record here was affirmed in 07. He tried for some reason, unsuccessful, that I don't know, to file PLAs in 2008 and 09. And then he filed a habeas in 2010, which was denied. And then like a month or two later after his habeas was denied, he filed this. So he hasn't been just sitting around for 13 years. Now, he certainly hasn't brought up this issue. No. Okay. So that's number one. The second answer, I guess, I'm sorry, now repeat your question because I forgot it. Well, I would say if we were to look at this in the traditional sense of vacating a guilty plea, not a guilty plea on a direct appeal, but 12, 15 years down the road, how can we say, what is your suggestion that this plea should be vacated, he should be given a new trial because a manifest injustice occurred? That's a sentence that apparently they all agreed upon, 24 years for all these crimes. There is no manifest injustice I can point to, right? If it's void, it's void, it's void. I said this case on page 6 of Dr. Fibery's, this Borghetti case, saying an allegation of voidness based on a question of law regarding jurisdiction has nothing to do with equitable principles. So if it's void, it's void. If it's not, it's not. But how do we, don't we have to look at all these other, do we simply ignore this idea that, of all the cases that say when a court exceeds its power, that sentence is void, but the other, there's multiple cases that say you're not, there's no absolute right to vacate a guilty plea. You have to show, the defendant has to show a manifest injustice. What do we do with those cases? I don't think I've found a case showing that they have to have a manifest injustice when something's been found void. Maybe I'm wrong. I think that that's why you can't, there is no absolute right to vacate a guilty plea. All right. Let me get rid of the stopwatch. In order to get the release, some release, the reformation release, you know, we're not asking to vacate the guilty plea. Okay. So in order to get that release, the state says stopwatch. But the only thing to say, if you really want to avoid prejudice, the only way to guarantee, absolutely guarantee to avoid prejudice is to send it back to make sure it's proper, because you don't know how sentencing law can change. You don't know what the DOC regulations are, how it affects people in prison, whether it's stacked one way or stacked another way. You don't know how that will change. All this stuff can be very complicated. The only way to guarantee that everything will happen the way the law is supposed to happen is to send it back to have concurrent sentences, consecutive sentences adding up to the cap. Why can't we just do what Justice McBride suggested? Spread these out, make them consecutive, lock off the innocence. As long as, assuming you're not going to grant a new trial, assuming you get to a cap for 24 years, it doesn't matter how you get to that cap. It doesn't. So we could do that. Assuming you disagree with my primary argument. All right. Assuming you disagree with my primary argument, doesn't get a new trial, I don't see what matters is if you rearrange it to 24 years or you order the court to do it as long as the cap is the same. Well, but nobody is trying to increase that cap. Right. So, I mean, that's why, if someone looked at this, would they think, well, why would he get to do this 15 years down the road when no one is trying to impose any greater burden on him than what he, it looks like everybody agreed this case is worth 24 years. 24 years. It's worth 24. You could get 75. You could argue there's defenses to the case. He should get less. They came up with a 24. Right. The only answer I have is if avoidance can be corrected at any time, then that has to mean it can be referred at any time whether or not there's a manifest injustice if it is corrected at any time. And with that, I'm going to end. Well, I did have another question, but it's escaping me now. So, we'll have to, you know, unless the other judges have anything. I would ask this one. Remand for a new trial or the alternative, remand for a new trial. Oh, I know. Here we go. Here we are. Here we are. Let's say that we were 20. Well, he's only going to do 20 years, right? If he got 24 and it's 85%, isn't it about 20? Well, except that the absence of abuse goes back to 40s and 70s. So, it depends. I guess it depends on how he behaves in prison. Let's say we have, like, the Donaldson case, okay? He got 50. Yeah. And the 30 and 30 ran concurrent. I got to ask you this. My math is, I love math. All right. Here's my question. Let's say that somebody gets 50. Somebody gets 50. And it's truth in sentencing, 85%. Right. And let's say they, 30, 35 years down the road on the murder. Let's say 30 years down. He's still in there. This comes up that the sentences should have been consecutive. And let's say that there were eyewitnesses originally. They're all dead. And let's say there was no confession, but, you know, just a few witnesses, but they're all dead now. All right. Now, would that, would your rule, would you still argue that since the sentences weren't properly applied consecutively, that 35 or 40 years into a sentence? I would have to. As an attorney. As an attorney, I would have to because the law says at any time. And as the State Appellate Defender, we'd be thrilled if the board, if the whole board had stopped. Because we have clients with honor problems all the time, and it seems unfair to us. What were you saying? You'd be very happy if they got rid of this? If the whole board had stopped, then we wouldn't have cases where we have to make, we have to choose between, well, there's an illegal sentence and we raise these issues or dismiss the case. Well, I mean. You know, I'm going to go both ways. I understand. These cases that have suggested that, you know, when a court exceeds its statutory authority that the sentence is void, are very problematic in terms of, you know, what is going on here. I mean, do you have other cases as well that involve this issue? I know the State Appellate Defender's office has these cases. I'm sure we do. I don't have. Because on my docket alone, I have at least three. I'm sure we do. I don't have them. I wonder if this is one of those situations where, with respect, when the Supreme Court decided to iron out, if they envisioned how far this was going to go. Almost like an apprendee. Now that justices in the U.S. Supreme Court, some of them are saying, you know, maybe we shouldn't have opened this door. I think that the Arner case presents a problem because it's being implied in a backwards fashion. I'm not sure that it was ever anticipated. It may not be. My answer is if they opened it or they closed it. I mean, I wonder if they could revisit that and say, you know, maybe we should have said voidable. You know, because if voidable by the agreed party, you know, as opposed to being void, because then we wouldn't have this problem. Well, they've been asked to review that Arner decision on multiple occasions. Including by us, yes. Yes, right. And, you know, Arner also, I think we have to look at it in the setting in which it took place. It was not a plea of guilty. It was actually a bench trial, and it was actually the appellate court justice who wrote the majority opinion that said that we're remanding this because mandatory sentences have to be imposed. Wasn't that what it was? Either way, then the Supreme Court decided that if a court becomes aware that a sentence is void, it has the authority to do what it did in that case. It was not a plea of guilty. It was not a plea. Anyway, I want to thank you both. Thank you. For your comments today. This is a very difficult decision, and there's so many issues at play, and I think the parties have admirably represented their respective clients, and we truly thank you for everything. We will take the matter under advice. Thank you, counsel.